Donald G. AUSTIN et al., Appellants,

v.

CITY OF BEDFORD, IOWA, Appellee.

No. 75-1640.

United States Court of Appeals,
Eighth Circuit.

Submitted April 15, 1976.

Decided May 25, 1976.

Peter N. Sterling, Kansas City, Mo., for appellant.

Theodore T. Duffield, Des Moines, Iowa, for appellee.

Before LAY and WEBSTER, Circuit Judges, and URBOM *, Chief District Judge.

LAY, Circuit Judge.

This diversity suit was brought in 1971 by Donald Austin, Franklin Bantz, and their wives against the City of Bedford, Iowa. The plaintiffs were the contract buyers of three contiguous tracts of land, and in 1966 they conveyed easements providing access to the City to each tract to permit straightening the channel of the East 102 River for flood control. Plaintiffs allege that the City breached the terms of the three conveyances and they sought $175,000 damages to compensate for the alleged reduction in the value of their land. The City filed a counterclaim alleging that plaintiffs had breached the conveyances and had caused the City to incur $5,000 in additional construction costs. In 1975, after the case was tried to the court, the Honorable William C. Hanson presiding, the City was awarded judgment on the complaint and $5,000 on the counterclaim.

On appeal, plaintiffs assert that the trial court erred in holding that under the terms of the conveyances: (1) the defendant was permitted to use dirt excavated from plaintiffs' land to fill a section of the old channel on the property of another landowner; (2) the defendant had no duty to move excess fill from one parcel of plaintiffs' land to another; and (3) that plaintiffs had wrongfully deposited debris on the City's easement right-of-way. Plaintiffs further assert that the trial court erred in (1) failing to make findings of fact on the City's alleged refusal to deposit excess dirt wherever plaintiffs requested and (2) holding that plaintiffs' land was not damaged in any event.

Plaintiffs' first contention is that the trial court overlooked the language in the conveyances which said "there will be no dirt whatsoever taken off the land of the grantors." It is undisputed that the City's contractor removed more than 20,000 cubic yards of dirt in order to fill the old channel where it curved into an adjoining farm. The trial judge did not set forth the reasons underlying his conclusion that this action was permissible under the conveyances. However, where an instrument is not am-

---

* The Honorable Warren K. Urbom, Chief Judge, United States District Court for the District of Nebraska, sitting by designation.

biguous, the proper construction of its terms is for the court. Here, the whole purpose of the easement conveyance was to allow the Army Corps of Engineers, under contract with the City, to straighten the East 102 River by excavating a new channel and filling the old. The conveyances specifically provide:

> [A]ll dirt arising . . . from the construction of the new channel on the land of grantors shall be deposited by grantee *where necessary in the old river channel* . . . to produce ground level elevations. . . .

(Emphasis added).

We think the plain import of the language is that the grantees had the right to use as much of the dirt excavated from the new channel as was necessary to fill the old channel. The prohibition against removal of dirt from the land was clearly not intended to defeat this overall purpose of the project, but was rather to preserve the plaintiffs' rights to excess dirt not needed to fill the old channel.

■ However, even assuming that the conveyances might be construed differently, the plaintiffs have failed to show any damage from the removal of the dirt.[1] The trial court found that there was no showing that plaintiffs incurred any hauling charges or other damages. Under the circumstances, plaintiffs' claim for the dirt removal cannot be sustained.[2]

■ Plaintiffs' second claim on appeal is that the district court misconstrued the City's duty to spread excess dirt wherever the grantors might designate. The convey-

ances provided that dirt not needed to fill the old channel was "to be dumped by grantee and leveled by it at points on grantors['] lands on either side of the new channel where grantors herein may designate it in writing to be done. . . ." The district court held that the grantee City was not required to move dirt from one parcel of plaintiffs' land to another.[3] It is urged that this was error since the three parcels were intended to be used as a single farm in the future and should have been treated as one unit of land under the conveyances.

We find that the district court's construction of the separate conveyances was reasonable. There was no testimony to show that the parties intended any other interpretation. Furthermore, there is credible evidence that low places were properly filled on plaintiffs' land, and that several places where plaintiffs desired additional fill had purposefully been left unfilled to provide needed drainage. Further, even if the contractor had not properly filled all the low areas, we again agree with the trial court that plaintiffs have failed to prove any damage.

*The Counterclaim.*

■ Plaintiffs' final asserted error was the trial court's award of $5,000 to the City on the counterclaim. The trial court found that plaintiffs had piled the brush, stumps and other debris from the land they cleared onto the City's easement right-of-way along the old channel. He further found that this cost the City $5,000 in additional payments to its contractors.

---

1. The plaintiffs' own witness responded to the court's question on this point as follows:
     THE COURT: All right. Now, what you are saying to me is that to deliver a load of dirt to John Jones' yard, you are going to charge him 15 or $20 if it is 15 miles from where that place is, *but insofar as the dirt itself is concerned, that wouldn't be worth much.* That is just a minimal, de minimus part of the problem, *is that right?*
     THE WITNESS: *Yes.*
   (Emphasis added).

2. There was testimony at trial that the grantors acquiesced in the dirt removal. Additionally, the City urges that the plans and specifications

attached to the conveyances show that the entire old channel was to be filled. However, the district court did not discuss these matters, and the plans and specifications were not included in the record on appeal, so we will not consider this on appeal.

3. The plaintiffs were contract buyers of three different parcels of land. Separate easement conveyances were drawn up for each of the *contiguous parcels, and the plaintiffs and the appropriate contract seller signed each conveyance as "grantors."* Thus, the "grantors herein" were different in each conveyance.

Plaintiffs' defense is that under the terms of the easement, they were permitted to do so. However, the Temporary and Permanent Easement provides under paragraph 4(e) that:

> If, in the course of clearing . . . their land of trees, brush, or other impediments, by the grantee [City] or its agents, it becomes necessary for them to dispose of such trees or other debris, including . . . stumps, by throwing the same into the bed of the old channel, it is . . . agreed by the grantee . . . that . . . said grantee will provide for covering the same with a minimum of two (2) feet of dirt, *and grantors shall have the same right to contemporaneously dispose* of . . . debris . . . in order to clear their land . . . in which event grantors will likewise cover the same with a minimum of two (2) feet of dirt . . . *as long as grantors do not interfere with the work of the contractor, this to be decided by the grantee.*

(Emphasis added).

The evidence is clear that the grantors piled their debris on the easement in a way which did interfere with the contractors and which the grantee City found to be interference. The debris was put onto the easement before the contractors arrived to begin work. So much was put there that the contractors could not put their machinery onto the easement. Since plaintiffs would not allow the contractors to put their machinery onto plaintiffs' land adjacent to the easement, the contractors refused to begin work and asked and received $5,000 from the City in addition to the original contract price to pay for removal of the debris.

The judgment is affirmed.